IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANGEL MENCHACA,

    Petitioner,

v.

A. KANE, Warden,

    Respondent.

No C 04- 2263 CRB (PR)

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Petitioner, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") decision of May 17, 2000 finding him not suitable for parole. For the reasons discussed below, the petition is denied.

## **BACKGROUND**

In 1984, petitioner was convicted of second degree murder with a personal firearm use enhancement in the Superior Court of the State of California in and for the County of Los Angeles and was sentenced to an indeterminate prison term of 15 years to life, plus two years for being armed with a firearm in the commission of the murder.

Petitioner was found not suitable for parole the first two times he appeared before the BPT. On May 17, 2000, petitioner came before the BPT for the third time. The BPT again found him not suitable for parole.

Petitioner challenged the BPT's May 17, 2000 decision in the Supreme Court of California. After the Supreme Court of California denied his habeas petition on September 24, 2003, petitioner filed a petition for a writ of habeas corpus with the United States District Court for the Southern District of California.

On December 19, 2003, the Southern District transferred the case to this court and, on June 23, 2004, this court granted petitioner leave to file a first amended petition for writ of habeas corpus.

In his First Amended Petition, petitioner alleged various constitutional violations in connection with the BPT's denial of his parole at the May 17, 2000 parole suitability hearing. Per order filed on December 7, 2004, this court found that, when liberally construed, petitioner's claims appear cognizable under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted.

On February 8, 2005, respondent moved to dismiss the petition for failure to exhaust state judicial remedies as to all claims. Per order filed on May 3, 2005, this court granted respondent's motion and, pursuant to the law of the circuit, gave petitioner the option of either withdrawing his unexhausted claim and proceeding only on his exhausted claims, or of dismissing the entire mixed petition and returning to federal court with a new petition once all claims are exhausted. Petitioner elected to withdraw his unexhausted claim and proceed only with his exhausted claims.

Per order filed on July 25, 2005, this court reinstated its order to show cause. Respondent has filed an answer, and petitioner has filed a traverse.

## DISCUSSION

**A.     Standard of Review**

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

**B.     Legal Claims**

Petitioner seeks federal habeas corpus relief from the BPT's May 17, 2000 decision finding him not suitable for parole on the ground that the decision does not comport with due process. Petitioner claims that the evidence does not support the BPT's decision and that

3

"the State of California has turned his punishment of second degree murder conviction into a punishment of first degree murder conviction in violation of the due process clause to the United States Constitution."

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) -- (d).

This parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has never been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with 15-to-life sentence implicated prisoner's liberty interest).

Respondent argues that the Ninth Circuit's holdings in McQuillon and Biggs no longer control because the Supreme Court of California since held in In re Dannenberg, 34 Cal. 4th 1061 (2005), that the language of section 3041 is not mandatory and, therefore, California inmates cannot have a liberty interest in early release on parole that is protected by federal due process. The Ninth Circuit, however, recently rejected respondent's no-liberty-interest argument and made clear that "California inmates continue to have a liberty interest in parole after In re Dannenberg, 34 Cal. 4th 1061 (2005)." Sass v. California Bd. of Prison Terms, No. 05-16455, slip op. 10563, 10566 (9th Cir. Aug. 31, 2006). It also held that the "some evidence" standard identified in Superintendent v. Hill, 472 U.S. 445 (1985), is clearly established federal law in the parole context for § 2254 (d) purposes. Id. at 10572-73

4

Due process requires that "some evidence" support the parole board's decision not to release the prisoner. Biggs, 334 F.3d at 915; (holding that Hill, which required "some evidence" to support revocation of inmate's good-time credits, applies to decisions to deny parole reviewed in § 2254 habeas petition); McQuillion, 306 F.2d at 904 (same); Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987) (same). The "some evidence" standard is minimally stringent: The "Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." Hill, 472 U.S. at 456 (emphasis added). The relevant question for the court is "whether there is any evidence in the record that could support the conclusion reached by the [BPT]." Id. at 455-56. The court "cannot reweigh the evidence;" it only looks "to see if 'some evidence' supports the BPT's decision." Powell v. Gomez, 33 F.3d 39, 42 (9th Cir 1994).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904; Jancsek, 833 F.3d at 1390. Relevant in this inquiry is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board. See Pedro v. Oregon Parole Bd., 825 F.2d 1396, 1399 (9th Cir. 1987); see also Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994) (court may consider whether a prisoner's allegations of any violations by the board are of a "minor" nature, whether they are supported in fact, whether the prisoner had an opportunity to participate, and whether he took full advantage of that opportunity), rev'd on other grounds, 514 U.S. 499 (1995).

In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

Here, the record shows that on May 17, 2000, petitioner appeared with counsel and an interpreter before a BPT panel for a subsequent parole consideration hearing. It was petitioner's third appearance before the BPT. The presiding commissioner explained that in assessing suitability for parole the panel would consider petitioner's commitment offense, prior criminality, social history, and behavior since commitment. The commissioner also

5

1  stated that the BPT would examine petitioner's progress since his last hearing, the new
2  psychiatric reports, and any other information that may have bearing on parole suitability.
3  Accord Cal. Code Regs. tit. 15, § 2402 (b) (setting out factors to be considered in
4  determining suitability for parole).  The commissioner explained that the panel had reviewed
5  petitioner's central file and prior transcripts, that it would afford petitioner an opportunity to
6  make corrections to the record, and that petitioner would be given an opportunity to make a
7  presentation regarding parole suitability and length of confinement.
8  　　　　The panel then provided petitioner with the opportunity to discuss his account of the
9  incident, his behavior since commitment and his plans upon release.  The panel also read
10 letters from character witnesses and heard final statements from petitioner's attorney and
11 petitioner.
12 　　　　The panel recessed to deliberate and, after the hearing resumed, found that petitioner
13 was "not suitable for parole" and "would pose an unreasonable risk of danger to society if
14 released from prison at this time." May 17, 2000 Hr'g Tr. at 33.  The panel explained that it
15 had considered many factors in order to come to this conclusion.
16 　　　　The panel found the commitment offense was carried out in a "cruel manner" and
17 "with a callous disregard for human suffering." Id.  Additionally, the panel determined that
18 the motive for the crime was "very trivial in relation to the offense." Id. at 36.  The murder
19 resulted from a dispute concerning loud music.  The victim, petitioner's next-door neighbor,
20 had complained several times to petitioner throughout the night about the loud music
21 emanating from his apartment.  After these complaints failed, the victim walked over to
22 petitioner's apartment and demanded that petitioner turn down the radio.  Petitioner
23 responded by retrieving a gun from under his sofa and shooting the victim five or six times,
24 the fatal shot entering through his back and puncturing his right lung.  After the shooting,
25 petitioner fled to Mexico where he stayed for several months, then came back into the
26 country and was arrested in Arizona.
27 　　　　The panel noted that petitioner's negative institutional behavior weighed against
28 suitability.  The panel pointed out that petitioner has several disciplinary violations while in

6

1 prison. The panel focused specifically on petitioner's two prior tattoo related infractions.
2 The panel stated that at petitioner's prior hearing, petitioner was admonished by the panel to
3 refrain from tatooing, and in spite of this admonishment petitioner committed a recent
4 tattooing violation. Id. at 34. Likewise, the panel found that petitioner had failed to upgrade
5 educationally. Id. at 34. Although petitioner followed the advice of the previous panel and
6 completed his vocational welding, petitioner had yet to receive a GED. Id. at 35.

7 The panel concluded that petitioner's most recent psychological report was
8 "unfavorable." The report, issued on September 16, 1999, was "not totally supportive of
9 release." Id. at 35. The panel noted that the report's classification of petitioner's risk of
10 future violence "corresponds to an estimated moderately above the average citizen in the
11 normal community."

12 The panel found that although petitioner has a minimal record, he has "an escalating
13 pattern of criminal conduct." Id. at 34. Petitioner's prior criminal record consists of a
14 driving under the influence of intoxicants arrest in 1983. Petitioner spent 30 days in jail for
15 the offense. The panel found that "he failed to profit from society's previous attempts to
16 correct his criminality." Id.

17 The panel commended petitioner for his "continued participation in AA." Id. at 36.
18 However, it made clear that "until progress is made the prisoner continues to be
19 unpredictable and a threat to others." Id. The panel encouraged petitioner to continue his
20 participation in self-help and therapy programing and recommended to petitioner to stay and
21 remain disciplinary free and upgrade educationally. Id. at 35.

22 Petitioner is not entitled to federal habeas relief on his federal due process claims.
23 The BPT's May 17, 2000 decision to deny petitioner parole after his third consideration
24 hearing is supported by some evidence in the record and that evidence bears some indicia of
25 reliability. See, e.g., Rosas, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (upholding denial of
26 parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916
27 (upholding denial of parole based solely on gravity of offense and conduct prior to
28 imprisonment); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal

7

1  history, cruel nature of offense and need for further psychiatric treatment).  Petitioner's
2  disagreement with the BPT's assessment of the evidence does not compel a different result.
3  Our inquiry here is simply "whether there is any evidence in the record that could support the
4  conclusion reached by the [BPT]."  Hill, 474 U.S. at 455-56.  There is-- the second degree
5  murder offense was carried out in a cruel and callous manner and based on a trivial motive;
6  petitioner suffered a recent prison disciplinary violation; petitioner's psychological report
7  was not entirely supportive; petitioner engaged in prior criminal activity and has failed to
8  profit from society's attempts to correct his criminality.  Cf. Cal. Code Regs. tit. 15, §
9  2402(c) & (d) (listing circumstances tending to show unsuitability for parole and
10 circumstances tending to show suitability).  It is not up to this court to "reweigh the
11 evidence."  Powell, 33 F.3d at 42.

12        Petitioner claims that the BPT's continued reliance on his committing offense violates
13 his due process rights.  But even if petitioner's recent disciplinary violation does not in of
14 itself constitute "some evidence," the Ninth Circuit has made clear that evidence of a
15 prisoner's "prior offenses and the gravity of his convicted offense" may "constitute some
16 evidence to support the [BPT's] decision."  Sass, slip op. at 10573.  The same rationale
17 applies here.  It simply cannot be said that in making a judgment call based on evidence of
18 petitioner's pre-conviction recidivism, the nature of the convicted offense, petitioner's recent
19 disciplinary infraction, and a non-supportive psychological report, the BPT acted
20 "arbitrarily."  See id.

21        Petitioner also contends that "the State of California has turned his punishment of
22 second degree murder conviction into a punishment of first degree murder conviction."  This
23 claim is without merit.  There is no indication in the record that the BPT considered any
24 factor generally associated with first degree murder in denying petitioner parole.  Instead, the
25 BPT used the parole suitability factors that California regulations require it to use.  See Cal.
26 Code Regs. tit. 15, § 2402(b).

27        The court is satisfied that the BPT gave petitioner individualized consideration and
28 that there is "some evidence" in the record to support the panel's decision to deny petitioner

8

parole after the May 17, 2000 subsequent hearing. It cannot be said that the state courts' rejection of petitioner's challenge to the BPT's May 17, 2000 decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or that it was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d); Sass, slip op. at 10573-74.

## **CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

IT SO ORDERED.

Dated: November 7, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE